## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Kenneth A. Hinton,

               Plaintiff,

       v.

Corrections Corporation of America,

            Defendant.

Civil Action No. 1:08-cv-00778-RWR

### DEFENDANT CORRECTIONS CORPORATION OF AMERICA'S
### MOTION TO DISMISS

Defendant Corrections Corporation of America ("CCA"), through counsel, files this Motion to Dismiss Plaintiff's Complaint pursuant to FED.R.CIV.P. 12(b)(6), because: (1) Plaintiff fails to state a state law claim for medical negligence, upon which relief can be granted; and, (2) Plaintiff fails to state a cognizable constitutional claim for deliberate indifference to serious medical needs.

Pursuant to LCvR 7(m), Plaintiff was contacted regarding this Motion and Plaintiff has declined to consent.

Accordingly, Defendant's Motion to Dismiss is supported by the following Statement of Points and Authorities and pleadings on file with this Court.

### STATEMENT OF POINTS AND AUTHORITIES

## I.    FACTUAL BACKGROUND

Defendant Corrections Corporation of America owns and operates the Correctional Treatment Facility ("CTF"), a private prison which houses inmates in custody of the D.C. Department of Corrections pursuant to a contract between the District of Columbia and CCA. The District of Columbia also has a contract with Unity Healthcare, Inc. ("Unity") to provide all

medical care to inmates during the time of Plaintiff's incarceration.[1]  It is a matter of public record that CCA does not provide medical care or assistance of any kind to inmates detained at CTF.[2]  Rather, CCA provides only security services at CTF.

Plaintiff filed his Complaint on May 6, 2008, against Corrections Corporation of America.  In the Complaint, Plaintiff alleges that his requests for prescription eyeglasses were ignored while he was in custody and that he later received negligent medical care.  Specifically, Plaintiff asserts a claim for deliberate indifference under the Eighth Amendment and medical negligence under state law.

CCA asserts, however, that Plaintiff's Complaint fails to state a claim upon which relief may be granted and that his Complaint must be dismissed.

## II.    ARGUMENT

While a Complaint attacked by a FED. R. CIV. P. 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than conclusions.[3]  Factual allegations must be enough to raise a right to relief above the speculative level.[4]  When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.[5]  Thus, a motion to dismiss for failure to state a claim must be granted when it appears that, under any reasonable

---

[1] *See, e.g., The Performance of Unity Healthcare, Inc. in the District of Columbia Jail:  Joint Hearing before the District of Columbia Comm. on Health and Comm. on Public Safety and the Judiciary,* July 12, 2007 (prepared testimony of Devon Brown) (available at http://newsroom.dc.gov/file.aspx/release/11615/JointHearingonThePerformanceofUnityHealthcareJuly122007.pdf) at 3 ("Unity became the sole provider of an extensive and comprehensive continuum for the District's inmates, which includes primary, specialty, emergency and hospital care.") (attached hereto as Exhibit 1).
[2] In resolving the instant motion, the Court may consider facts alleged in the Complaint, documents incorporated by reference in the Complaint, and matters of which the court make take judicial notice, including matters of public record.  *See EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624 (D.C. Cir. 1997).
[3] *Bell Atlantic Corp. v. Twombly,*, 127 S. Ct. 1955 (2007).
[4] *Id*. at 1964.
[5] *Id*. at 1966.

reading of the complaint, the plaintiff will be unable to prove any set of facts that would justify relief.[6]

### A.    Defendant CCA owed Plaintiff no duty under state law with respect to his eyeglasses or other medical care.

In this case, CCA is a private prison operator who, pursuant to a contract with the District of Columbia, is charged with housing inmates at CTF.   CCA does not have, however, any authority to provide medical care, including prescription eyeglasses to inmates.   Instead, all medical care is provided by Unity, a third-party vendor.

In this case, assuming the allegations in Plaintiff's Complaint are true, and viewing them in the light most favorable to him, Plaintiff fails to state a claim upon which relief can be granted against CCA.   In fact, Plaintiff's Complaint contains no allegations related to anything Corrections Corporation of America did, or did not do, that violated the law.   Instead, Plaintiff identifies several "medical staff", none of whom are or were ever employed by CCA, as failing to provide him with proper medical care.   As the Court is aware, CCA cannot be liable for the actions of employees not employed by the company.

Further, Plaintiff's Complaint fails to state an actionable medical negligence claim against CCA. Plaintiff's Complaint must allege that Defendant CCA "owed a duty of medical care to [Plaintiff], that the care provided fell short of the prevailing standard at the time of the events, and that the substandard care was the proximate cause of the injury."[7]   Plaintiff does not, and

---

[6] *Haynesworth v. Miller*, 820 F2d. 1245, 1254 (D.C. Cir. 1987); *Conley v. Gibson*, 355 U.S. 41, 45 (1957) (complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of her claim which would entitle her to relief).

[7] *Scott v. District of Columbia,* 2006 WL 1409770, *3, No. 05-1853 (RWR), (D.D.C. May 23, 2006) (citing *Eibl v. Kogan*, 494 A.2d 640, 642 (D.C. 1985)); *see also, Kelton v. District of Columbia,* 413 A.2d. 919, 922 (D.C. 1980) (Labeling a claim "medical negligence" does not amount to a cause of action when the "complaint specifies no negligent act and fails to characterize the duty whose breach might have resulted in negligence liability.), *Pannu v. Jacobson,* 909 A.2d 178, 202 (D.C. 2006)(J. Kramer, dissent) ("A lawsuit such as this for medical negligence is a clam against a doctor or other healthcare provider.)

cannot, allege that Defendant Corrections Corporation of America owes him a duty of medical care.  As outlined, during all relevant times, CCA had no contractual liability or responsibility for providing medical care to any inmate.[8] Therefore, Plaintiff cannot either establish a duty that was breached by CCA or establish as causal connection between his claims of medical negligence and conduct by CCA. As Plaintiff cannot establish that Defendants owed him a duty of medical care; that Plaintiff failed to plead that the care he received fell below the prevailing standard of care; and  that Plaintiff failed to plead that the substandard care was the proximate cause of an actual injury, Plaintiff fails to state a claim for medical negligence upon which relief can be granted. Accordingly, Plaintiff's claims against Defendant CCA must be dismissed and Defendant's Motion to Dismiss granted.

   **B.      Plaintiff fails to state a cognizable Constitutional claim.**

Defendant CCA may not "be found liable under the Eighth Amendment for denying an inmate human conditions of confinement unless the official knows of an disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference."[9]  As such, Plaintiff's Complaint must allege that the deprivation is objectively serious and that defendants were subjectively deliberately indifferent to Plaintiff's plight.[10]  Plaintiff does not make those allegations in his Complaint.

Plaintiff must first show a substantial physical harm resulting from his resulting from his claims.[11]  Plaintiff fails to allege any physical harm or threatened injury related to the delay in

---

[8] *See* Modification No. 4 to the Operations and Management Agreement by and between the District of Columbia and Corrections Corporation of America, effective April 1, 2003, relating to the provision of medical services to inmates incarcerated at CTF (attached hereto as Exhibit 2)

[9] *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

[10] *Anderson-Bey v. District of Columbia,* 466 F.Supp.2d 51, 61 (D.D.C. 2006).

[11] *Valley Forge Christian College v. Americans United for Separate of Church and State, Inc.,* 454 U.S. 464, 472

receiving his eyeglasses.  Rather, Plaintiff alleges that he "continue[s] to suffer with ongoing mental anguish, emotional distress, diminished vision and anxiety."[12]  However, diminished vision is only the original symptom and does not rise to the level of substantial harm required by the objective prong of the *Farmer* test, and, if it does, the limited duration of the conduct complained of fails to meet the subjective, deliberate indifference prong.[13]

Second, Plaintiff fails to allege deliberate indifference by Defendant CCA.  "To state a claim under the Eighth Amendment, Plaintiff must, at minimum, allege facts sufficient to establish that Defendants possessed a total unconcern from his welfare in the fact of serious risks."[14]  Plaintiff never attempts to make any such allegation in his Complaint. Here, Plaintiff did utilize the available administrative remedies, by bringing his complaints to the attention of medical officials, but it is undisputed that Plaintiff was seen by two ophthalmologists and received his eyeglasses approximately one month after his last examination.[15]  For those claims where prison officials actually knew of a substantial risk and responded reasonably to that risk, the officials may "be found free from liability …. Even if the harm ultimately was not averted."[16]  Where the risks were timely addressed, there is no deliberate indifference to Plaintiff's Eight Amendment rights, in fact, there was no indifference at all, and those claims must be

---

(1982) (A plaintiff must prove "actual or threatened injury" to ensure that "the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action."). *See also, Lewis v. Casey,* 518 U.S. 343, 349-350 (1996) (Inmates must show actual harm in order to have standing to sue.)

[12] *See* Compl. at 6.

[13] *See Estelle v. Gamble,* 429 U.S. 97 (1976) (no Eighth Amendment claim stated where prison officials, *inter alia,* inadvertently failed to fill prisoner's prescription for blood pressure medication); *Glover v. Ridley,* 1994 WL 35849 at *5, 93-cv-492 (SSH) (D.D.C. 1994) (failure to provide the drug AZT on occasion "clearly fail[s] to meet the deliberate indifference standard); *Cox v. District of Columbia,* 834 F.Supp. 439 (D.D.C. 1992) (delay in providing medication to prisoner insufficient to state Eighth Amendment claim); *Bryan v. Administrative of F.C.I. Otisville,* 879 F.Supp. 134 (S.D.N.Y. 1995) (objective prong not met where prisoner was deprived of medicine, causing fever and mouth infection); *Shapely v. Nevada,* 766 F.2d 404, 407 (9th Cir. 1985) (*per curiam*) (a "delay in medical treatment must have caused substantial harm" to constitute Eighth Amendment violation).

[14] *Pryor-El v. Kelley,* 892 F.Supp. 261, 268 (D.D.C. 1995).

[15] Compl. at 5.

[16] *Farmer,* 511 U.S. at 844.

1939532.1

dismissed.[17]  Here, Plaintiff fails to allege that Defendant CCA subjectively knew of a substantial risk to Plaintiff's medical welfare and deliberately chose to ignore that risk, causing harm to Plaintiff. And, Plaintiff cannot make any such cognizable allegation where it is undisputed that CCA doesn't provide medical care to CTF inmates. Accordingly, Plaintiff fails to state a cognizable Eighth Amendment claim.

Finally, while Plaintiff's Complaint makes repeated allegations against "medical officials" and refers to "contract opthalmologist [sic]", such allegations are not sufficient to state a § 1983 with respect to corporate defendant Corrections Corporation of America.  "When a private corporation is acting under contract with the District of Columbia government to operate a correction institution, Section 1983 liability depends on the plaintiff's ability to allege that his injury is a result of the "custom or policy" of the private corporation."[18]  In the instant case, where Plaintiff raised no allegation of "the existence of any policy or custom that could have arguably violated his rights, dismissal is proper."[19] For these reasons, Plaintiff fails to state a constitutional claim against CCA and Defendant's Motion to Dismiss should be granted.

## III.  <u>CONCLUSION</u>

Plaintiff's Complaint must be dismissed because Plaintiff failed to state either a state law or constitutional claim against Defendant CCA. Accordingly, CCA respectfully requests that its Motion to Dismiss be GRANTED.

---

[17] *Gabriel v. Corrections Corp, of America,*  211 F.Supp.2d 132, 139 (D.D.C. 2002) ("dismissal is proper where a plaintiff alleges no facts that indicate that a defendant's failure to provide treatment was deliberate.")
[18] *Jackson v. Corrections Corporation of America,* 2007 WL 1848014, *7, Civ. Action No. 06-1241 (CKK) (D.D.C. June 27, 2007) (citing *Brown v. District of Columbia,* 2005 WL 3276267, *3, No. Civ. A. 04-2195 (RMU) (D.D.C. August 2, 2005) and *Gabriel,* 211 F.Supp.2d at 138).
[19] *Gabriel,* 211 F.Supp.2d at 139.

Dated: July 21, 2008

Respectfully submitted,

JONES, SKELTON & HOCHULI, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, Arizona  85012
Tel:    (602) 263-1700


By:    s/ Jennifer L. Holsman
    Daniel P. Struck, Bar No. CO0037
    Jennifer L. Holsman, Bar No. 495296
    Attorneys for Defendant Corrections
    Corporation of America

ORIGINAL of the foregoing filed ELECTRONICALLY
this 21st day of July, 2008 .

COPY of the foregoing mailed
this 21st day of July, 2008, to:

Kenneth A. Hinton
2200 Wilson Blvd., Suite 102-004
Arlington, VA 22201
*Plaintiff Pro per*

Mariana D. Bravo, Esq.
CARR MALONEY, P.C.
1615 L Street, NW, Suite 500
Washington, DC 20036

*Attorneys for Defendant Corrections*
*Corporation of America*


  s/ Jennifer L. Holsman
    Jennifer L. Holsman

- 7 -

1939532.1

**EXHIBIT 1**

**Government of the District of Columbia**



**Department of Corrections**

Testimony of
# Devon Brown
Director

## *"The Performance of Unity Healthcare, Inc. in the District of Columbia Jail"*

**Joint Hearing**
Council of the District of Columbia

Committee on Health
David A. Catania, Chair

Committee on Public Safety and the Judiciary
Phil Mendelson, Chair

July 12, 2007

Room 412
John A. Wilson Building
1350 Pennsylvania Avenue, NW
Washington, DC 20004
11 A.M.

Good Morning, Chairman Catania, Chairman Mendelson and members of the Committee on Public Safety and the Judiciary and the Committee on Health. I am Devon Brown, Director of the DC Department of Corrections. Joining me is my Health Services Administrator, Dr. Henry Lesansky.

I appreciate this opportunity to appear before you today to present testimony on the performance of Unity Healthcare, Inc., as it relates to the provision of medical and mental health services to inmates in the custody of DC Department of Corrections. Last fiscal year the Department of Corrections processed more than 19,000 individuals in and out of its detention system. At a minimum, on any given day approximately 3,000 pre-trial and sentenced inmates are detained in Department custody. These individuals are housed at the Central Detention Facility (DC Jail), which is the District's primary adult correctional institution; the Correctional Treatment Facility (CTF), a private detention facility operated by Corrections Corporation of America and under exclusive contract to the Department; and four (4) private halfway houses. The Department of Corrections is responsible for promoting public safety through the maintenance of a safe, orderly and secure correctional environment while

ensuring the provision of adequate medical and mental health services to its

detention population.  These services include medical, dental, and mental

health screenings, assessments, and treatment.  The care that we provide

meets all constitutional standards and professional guidelines.

In October 2006, the Department of Corrections changed its inmate

medical program, embarking upon one that provides a community-oriented

model of healthcare.  The change resulted in a newly formed partnership

with Unity Healthcare, Inc., one of the area's largest networks of health care

centers for the economically challenged population of the District.  Through

this arrangement Unity became the sole provider of an extensive and

comprehensive healthcare continuum for the District's inmates, which

includes primary, specialty, emergency and hospital care.  The partnership

between the Department of Corrections and Unity Healthcare to administer

such an innovative approach to inmate healthcare reflects the District

government's vision for a healthy city.

As part of the transition, the Department assumed full responsibility for

all health related information technology support including software,

hardware and communications infrastructure.  This change to a community-

3

oriented model of healthcare has resulted in an improvement in the planning, monitoring and service delivery of the agency's inmate health services.

I am particularly encouraged by the partnership, the collaborative manner in which we have approached and addressed the challenges that are naturally inherent in a transition of this magnitude, and the accomplishments that have resulted to date from this union.  The Unity contract has 202 budgeted positions, of which 182 are reportedly filled.  The Unity Healthcare team is situated on site at the Central Detention Facility and Correctional Treatment Facility to identify and develop treatment planning and service delivery for diagnosed diseases as well as at community based health centers.  As many of these healthcare providers also spend considerable time working in community health centers, the likelihood is thereby increased that continuity of care between incarceration and return to the community is maintained.

With respect to this situation, discharge planning is an extremely important part of the program that begins at the point of intake to the correctional facility.  Discharge planners actually see 100 percent of the inmates that are sent to the jail.  Within the first 24 hours of admission, the inmate is seen by a Unity discharge planner, who collects baseline data to

4

assist in determining the potential needs of the individual upon release including housing, employment, food, and clothing assistance. Among the other services provided by the discharge planner are information about Unity and other health clinics, how to make a follow-up appointment at a Unity health center or other center of the inmate's preference, and enrollment application for Medicaid.

Unity plays an integral role in the implementation of a number of health related initiatives. Their collaboration with other entities that share an interest in correctional/criminal justice will significantly enhance the capacity of these organizations and their overall effectiveness in the delivery of services to inmate. The Department's measures to specifically address the HIV pandemic are reflective of our overall efforts to improve the health of those entering and leaving our gates. Our automatic HIV/AIDS initiative implemented in conjunction with the Department of Health has received widespread acclaim and has served as a catalyst for the introduction of legislation to create similar programs by state and local governments across the country in their efforts to control the spread of this devastating illness. Most recently our program was used as a model by Congresswoman Maxine Waters in proposing legislation for HIV testing of all inmates in the Bureau

5

of Prisons.  In addition, the Reverend Jesse Jackson, who recently launched

a nation-wide campaign urging testing for HIV, recently visited the DC Jail

to observe the Department's HIV testing program and extolled our

pioneering approach.  The Honorable Eleanor Holmes Norton has also

demonstrated her support of our efforts, and praised the contributions that

inmates who are serving as peer educators are making in increasing HIV

awareness.

Other examples of the outstanding recognition that we are receiving for

our efforts include:

- The John Jay College of Criminal Justice, the leading institution of

  higher learning for the study of criminal justice, will be conducting a

  research evaluation of our healthcare model through a grant by the

  prestigious Robert Wood Johnson Foundation.


- The Department of Justice, pursuant to the Residential Substance

  Abuse Treatment for State Prisoners Act (RSAT), awarded the

  Department a grant in the amount $288,000.  DOC will collaborate

  with Addiction Prevention Recovery Administration (APRA) to

  implement "Progress Toward Improvement," a Modified Therapeutic

  Community of 60 beds (40 males and 20 females) to provide

substance abuse services for up to 500 inmates annually.  Unity

Healthcare will provide day-to-day services and administration of the

program including dually-supervised case management with APRA.

Unity will make application for certification of the program with

technical assistance provided by APRA.

- A grant proposal has been submitted by the Department in partnership

  with the Women's Wing Organization (WWO) to the U.S.

  Department of Health for $1.6 million ($400,000 each year) to

  enhance community healthcare services for HIV-positive female

  inmates and their minor children.  The Department of Corrections also

  plans to request that the John Jay College of Criminal Justice conduct

  the research component of this grant, if awarded.  By means of this

  demonstration grant, the District of Columbia Department of

  Corrections will serve as a national model in its approach to the

  identification and treatment of HIV/AIDS within correctional

  environments.

The Department's partnership with Unity Healthcare has also resulted in

improved healthcare protocols as it relates to correctional healthcare policy and staff training.

The quality of care has increased as well as the continuity of care in the community. The Department of Corrections is confident that this new model will improve healthcare for inmates while simultaneously improving public health outcomes by aligning the goals of public safety and public health.

In conclusion, I leave you with these observations made in 1929 by the "National Society for Penal Information" as conveyed in a publication entitled, Health and Medical Service in American Prisons and Reformatories, by F.L. Rector:

> "Viewed from whatever angle, whether social, economic, administrative, or moral, it is seen that adequate provision for health supervision of the inmates of penal institutions is an obligation which the state cannot overlook without serious consequences to both the inmates and the community at large."

These resounding words are as true today as when written over 7 decades ago.   Their message remains penetrating and highly compelling in its conveyance that the health of our nation shall be greatly influenced by the manner in which we address our prisons.

Thank you again for this opportunity to testify before you today.  I would be pleased to answer any questions that you may have.

###

**EXHIBIT 2**

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | 1. Contract Number 7005-AA-NS-4-MW | | Page of Pages 1        6 |
|---|---|---|---|
| Amendment/Modification Number M0004 | 3. Effective Date 4/1/2003 | 4. Requisition/Purchase Request No. | 5. Solicitation Caption Correctional Treatment Facility |

o. Issued By:                                          Code        FL0
OFFICE OF CONTRACTING AND PROCUREMENT
Public Safety Cluster
1923 Vermont Avenue, N.W., Room No. N-224
Washington, D.C. 20001

7. Administered By (If other than line 6)

The Department of Corrections
1923 Vermont Avenue, N.W.
Washington, D.C. 20001

8. Name and Address of Contractor (No. Street, city, country, state and ZIP Code)

Corrections Corporation of America
10 Burton Hills Blvd.
Nashville, TN 37215

| | |
|---|---|
| 9A. Amendment of Solicitation No. | |
| 9B. Dated (See Item 11) | |
| 10A. Modification of Contract/Order No. 7005-AA-NS-4-MW | X |
| 10B. Dated (See Item 13) 17-Jul-03 | |

| Code | | Facility | |
|---|---|---|---|

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended. ☐ is not extended. Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning _____ copies of the amendment: (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or fax which includes a reference to the solicitation and amendment number. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by letter or fax, provided each letter or telegram makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. Accounting and Appropriation Data (If Required)
THIS IS A "NO ADDITIONAL COST" MODIFICATION

**13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS,
IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14**

| X | A. This change order is issued pursuant to: (Specify Authority) | Paragraph 19 "Changes Clause" of the Standard Contract Provisions for with the District of Columbia Government Supply and Services Contract, d April 2003 |
|---|---|---|
| X | The changes set forth in item 14 are made in the contract/order no. in Item 10A. | |
| | B. The above numbered contract/order is modified to reflect the administrative changes (such as changes in paying office, appropriation date, etc.) set forth in Item 14, pursuant to the authority of 27 DCMR, Chapter 36, Section 3601.2. | |
| X | C. This supplemental agreement is entered into pursuant to authority of: WHICH REFLECTS AGREEMENTS BETWEEN THE PARTIES TO MODIFY THE TERMS OF THE CONTRACT | Paragraph 7.1.4.2 Decrease in Per Diem Rate, Contract Ref. 10A |
| | D. Other (Specify type of modification and authority) | |

E. IMPORTANT:    Contractor ☐ is not, ☒ is required to sign this document and return    2    copies to the issuing office.

14. Description of amendment/modification (Organized by UCF Section headings, including solicitation/contract subject matter where feasible.)

THE CONTRACT REFERENCED IN BLOCK 10A HEREBY MODIFIED AS SPECIFIED IN THE ATTACHED 5 PAGES.

ATTACHMENTS:
Standard Contract Provisions, dated April 2003

9

Except as provided herein, all terms and conditions of the document referenced in Item (9A or 10A) remain unchanged and in full force and effect

| 15A. Name and Title of Signer (Type or print) Damon Hidinger, OP, Fed. Ecbst Rel. | 16A. Name of Contracting Officer John Soderberg |
|---|---|
| 15B. Name of Contractor | 15C. Date Signed 9/1/03 | 16B. District of Columbia | 16C. Date Si 4/1 |



# MODIFICATION #4 OF THE OPERATIONS AND MANAGEMENT AGREEMENT

## by and between

## THE DISTRICT OF COLUMBIA

### and

## CORRECTIONS CORPORATION OF AMERICA

THIS MODIFICATION OF THE OPERATIONS AND MANAGEMENT AGREEMENT (the "Agreement") is made and entered into as of April 1, 2003, by and between THE DISTRICT OF COLUMBIA, a municipal corporation (the "District") and CORRECTIONS CORPORATION OF AMERICA, a corporation duly organized and existing under the laws of Delaware (the "Operator" or "CCA").

WITNESSETH:



WHEREAS, the District entered into the Agreement, dated January 30, 1997, with the Operator to operate and maintain the Correctional Treatment Facility;

WHEREAS, the District desires to assume Operator's food service obligations under the Agreement;

WHEREAS, the District has assumed Operator's medical service obligations under the Agreement; and

WHEREAS, the Parties desire to amend the Agreement accordingly;

NOW, THEREFORE, for and in consideration of the foregoing and the promises and mutual covenants hereinafter contained, and subject to the conditions herein set forth, the District and the Operator hereby covenant, agree, and bind themselves as follows:

Section 5.4.5 shall be deleted and replaced with the following: "The District shall assume all liability for the provision of all medical services for inmates housed at the Facility and shall render such services in accordance with the Operating Standards, and the Operator shall have no liability therefor. In the event the District fails to provide proper medical services and/or the District's manner of providing medical services interferes with the Operator's ability to comply with Operating Standards shall be considered a material failure for the purposes of Section 9.2.2. The Contract Monitor



shall administer all inmate grievances related to medical service, and the Operator shall have no responsibility or liability therefor except as set forth herein. The District shall indemnify, hold harmless and defend CCA, its employees, agents, servants and representatives from and against any and all claims and demands of whatever nature, regardless of the merit thereof, which may be asserted against CCA its employees, agents, servants or representatives related to the provision of medical service by the District or the District's subcontractor. The District's indemnity obligation shall not extend to any act or failure to act by Operator that inhibited the District's ability to render proper medical service, and the Operator shall indemnify the District for any such act or failure to act. In the event CCA desires the District to provide medical screening for potential CCA employees, the District shall provide such service at a rate of $100.00 per potential employee. Other medical services provided by the medical services provider for CCA employees will be charged at the prevailing rates within the District. The District shall reimburse Operator for compensation paid by Operator to CCHPS for services rendered to Facility inmates from November 1, 2002 through March 31, 2003."

**REDACTED**

11

**REDACTED**



**REDACTED**

Section 10.1 shall be amended to add: " The Operator shall have no indemnification responsibilities related to the provision of medical or food services except as specifically stated in Sections 5.4.5 and 5.4.6."

This Modification shall be effective on April 1, 2003.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the date first above written.

**THE DISTRICT OF COLUMBIA**
**("District")**

By: *John L. Soderberg*

Title: *Contracting Officer*

**CORRECTIONS CORPORATION OF AMERICA**
**("Operator")**

BY: *[signature]*

Title: *VP, Federal Cust. Relations*

13

REVIEWED BY:

_____

G. A. PURYEAR IV
GENERAL COUNSEL


_____

DAVID M. GARFINKLE
VICE PRESIDENT, FINANCE

**EXHIBIT 3**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Kenneth A. Hinton,

               Plaintiff,

      v.

Corrections Corporation of America,

               Defendant.

Civil Action No. 1:08-cv-00778-RWR

## DECLARATION OF JENNIFER L. HOLSMAN

I, JENNIFER L. HOLSMAN, under penalty of perjury of the laws of the United States of America do declare the following:

      1.      I am counsel of record for Defendant Corrections Corporation of America.

      2.      I have personal knowledge that the matters in this Declaration are true and accurate, and submit this Declaration in support of Defendants Corrections Corporation of America's Motion to Dismiss Plaintiff's Complaint.

      3.      The foregoing Exhibit 1 is a true and accurate copy D.C. Department of Corrections' Director Devon Brown's prepared testimony before a Joint Hearing of the Council of the District of Columbia Committee on Health and Committee on Public Safety and the Judiciary, on *The Performance of Unity Healthcare, Inc. in the District of Columbia Jail,* held on July 12, 2007 and available at

1941158.1

http://newsroom.dc.gov/file.aspx/release/11615/JointHearingonThePerofrmanceofUnityHeal
thcareJuly122009.pdf. This document is a public record.

    4.  The foregoing Exhibit 2 is a true and correct copy of relevant portions
Modification #4 of the Operations and Management Agreement by and between the District
of Columbia and Corrections Corporation of America, effective April 1, 2003, relating to the
provision of medical services to inmates incarcerated at CTF.  This document is public
record.[1]


  I have reviewed the foregoing, and I declare under penalty of perjury of the laws of the
United States of America that the foregoing is true and correct.


Dated: July 21, 2008     Respectfully submitted,

         JONES, SKELTON & HOCHULI, P.L.C.
         2901 North Central Avenue, Suite 800
         Phoenix, Arizona  85012
         Tel: (602) 263-1700


         By:___s/ Jennifer L. Holsman_____
          Jennifer L. Holsman, Bar No. 495296
          Attorneys for Defendant Corrections
          Corporation of America

- 2 -

1941158.1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Kenneth A. Hinton, | |
| Plaintiff, | Civil Action No. 1:08-cv-00778-RWR |
| v. | |
| Corrections Corporation of America, | |
| Defendant. | |

## <u>ORDER TO DISMISS WITH PREJUDICE</u>

UPON motion of Corrections Corporation of America to dismiss Plaintiff's Complaint and for good cause shown,  it is this ___ day of _____, 2008 **ORDERED** that Defendants' motion be granted and further; ordered, that all claims against Defendants Corrections Corporation of America be dismissed with prejudice.

Dated: July _____, 2008

By:_____
        Honorable Richard W. Roberts

1941179.1